AO 91
Rev. 11/97

**CRIMINAL COMPLAINT**

ORIGINAL

| UNITED STATES DISTRICT COURT | CENTRAL DISTRICT OF CALIFORNIA |
|---|---|

| UNITED STATES OF AMERICA<br>v.<br><br>DAVID HERNANDEZ<br>KENIA MUNGUIA<br>EDWIN ALAS<br>ROGELIO ANTONIO RAMIREZ, and<br>CARLOS MENDEZ | DOCKET NO.<br><br>MAGISTRATE'S CASE NO.<br><br>8-<br>**08-1412M** | FILED<br>CLERK, U.S. DISTRICT COURT<br><br>**JUN 13 2008**<br><br>CENTRAL DISTRICT OF CALIFORNIA<br>BY _____ DEPUTY |

Complaint for violations of Title 21, United States Code, Sections 846, 841(a)(1) and 841(c)(2)

| NAME OF MAGISTRATE JUDGE<br>HONORABLE CHARLES F. EICK | UNITED STATES<br>MAGISTRATE JUDGE | LOCATION<br><br>Los Angeles, CA |
|---|---|---|

| DATE OF OFFENSE<br>continuing to on or about<br>June 13, 2008 | PLACE OF OFFENSE<br><br>Los Angeles County | ADDRESS OF ACCUSED (IF KNOWN) |
|---|---|---|

COMPLAINANT'S STATEMENT OF FACTS CONSTITUTING THE OFFENSE OR VIOLATION :

Beginning on a date unknown, and continuing to on or about June 13, 2008, in Los Angeles County, within the Central District of California, defendants DAVID HERNANDEZ, KENIA MUNGUIA, EDWIN ALAS, ROGELIO ANTONIO RAMIREZ and CARLOS MENDEZ and others known and unknown, conspired and agreed with each other to knowingly and intentionally aid and abet the manufacture of more than 50 grams, of actual methamphetamine, a schedule II controlled substance, in violation of Title 21, United States Code, Section 846, 841(a)(1).

Beginning on a date unknown, and continuing to on or about June 13, 2008, in Los Angeles County, within the Central District of California, defendants DAVID HERNANDEZ, KENIA MUNGUIA, EDWIN ALAS, ROGELIO ANTONIO RAMIREZ and CARLOS MENDEZ knowingly and intentionally possessed pseudoephedrine, a listed chemical, knowing and having reasonable cause to believe that the pseudoephedrine would be used to manufacture a controlled substance, namely methamphetamine, a Schedule II controlled substance, in violation of Title 21, United States Code, Section 841(c)(2).

BASIS OF COMPLAINANT'S CHARGE AGAINST THE ACCUSED:
(See attached affidavit which is incorporated as part of this Complaint)

MATERIAL WITNESSES IN RELATION TO THIS CHARGE

| Being duly sworn, I declare that the foregoing is true and correct to the best of my knowledge. | SIGNATURE OF COMPLAINANT<br>BRADLEY CLEMMER |
|---|---|
| | OFFICIAL TITLE<br>SPECIAL AGENT -- DRUG ENFORCEMENT ADMINISTRATION |

Sworn to before me and subscribed in my presence,

| SIGNATURE OF MAGISTRATE JUDGE(1) | DATE<br>June 13, 2008 |
|---|---|

1)   See Federal Rules of Criminal Procedure rules 3 and 54.

LAR:sdp                    REC: arrest warrant all defendants

## AFFIDAVIT

I, Brad Clemmer, being duly sworn, declare and state:

1.    I am an investigative and law enforcement officer of the United States within the meaning of Title 18, United States Code, Section 2510(7), who is empowered to conduct investigations of, and to make arrests for, the offenses enumerated in Title 18, United States Code, Section 2516.

### Training and Experience

2.    I am a Special Agent ("SA") of the Drug Enforcement Administration ("DEA") and have been so employed since May 2, 1992.  I attended the DEA Training Academy from May 2, 1992 to August 21, 1992.  I received specialized training while attending the DEA Training Academy in Quantico, Virginia, concerning violations of the Controlled Substances Act within Title 21 of the United States Code, including: surveillance; interviewing of suspects; writing of warrants; handling of evidence; arrest procedures; testifying in court.  Since graduating from the academy, I have been assigned to the Los Angeles Field Division ("LAFD") Enforcement Group 1 that investigates methamphetamine traffickers and methamphetamine manufacturing organizations.

3.    Prior to joining DEA, I was a commissioned officer in the United States Officer in the United States Army and was the officer in charge of training DEA agents for operation in Central and South America.

4.   While with DEA LAFD and previously, I have assisted in a variety of investigations involving the use of surveillance, search warrants, confidential informants and other traditional law enforcement techniques.  I have participated in numerous drug, controlled substances and listed chemical investigations in conjunction with other experienced special agents and local law enforcement investigators/detectives.  These investigations involved: (1) unlawful importation, manufacture, possession with intent to distribute and distribution of methamphetamine and other drugs or controlled substances and/or listed chemicals; (2) the laundering of narcotic and precursor chemical proceeds and monetary instruments derived from narcotic activities; (3) conspiracies associated with narcotic and precursor chemical offenses.

5.   Through my training, experience, and interaction with other experienced special agents, federal DEA Task Force Officers ("TFO") and local law enforcement investigators, I have learned that pseudoephedrine is the essential precursor used in the illicit manufacturing of methamphetamine.  Most pseudoephedrine products are readily available over-the-counter, and do not require a medical prescription or recommendation.

6.   I have also learned that the Combat Methamphetamine Epidemic Act 2005 established federal law to limit the amounts pseudoephedrine that an individual can legally purchase.  Federal law limits the sale and purchase of pseudoephedrine products to no more than 3.6 grams per person, per day and an individual

2

purchase of 9 grams or less per 30 days period.   Federal law requires that a person be eighteen years or older and present any form of valid identification in order to purchase a medication containing pseudoephedrine.

7.    Based on my training and experience as well as my conversations with other DEA agents and LAPD Detective 3 Rick Gutierrez, who has been employed with LAPD for 34 years worked on precursor chemical and manufacturing drug cases the past twelve years as the Los Angeles Police Departments Clandestine Laboratory Group Supervisor, I know that the individuals involved in the purchase of pseudoephedrine products (including CVS Decon, Claritin-D, Sudafed, Aleve and other products) to facilitate the manufacture of methamphetamine, will use a variety of methods to obtain pseudoephedrine through purchases that would appear to be legal and legitimate.   Often subjects will enter a retail store and purchase the lawful amount of pseudoephedrine and leave the store.   That subject will then repeat the same type of transaction, at several other retail stores, collecting excessive amounts of pseudoephedrine products in violation of the federal law.   At the end of the day, the subject will gather a large quantity and hand off the contraband to the next level and be compensated.   Through my training and experience, I have also learned that subjects involved in multiple daily purchases of pseudoephedrine, will often discard shopping bags and receipts from multiple daily purchases to avoid prosecution, for purchasing in excess of the daily limit.   They will often remove

the pills containing pseudoephedrine, from the blister packs and discard the blister packs, to further conceal their illicit activity.  I have also learned that subjects involved in the brokering of pseudoephedrine will often use multiple groups or cells, to procure larger quantities of pseudoephedrine.  The activity of purchasing excessive amount of pseudoephedrine, at multiple locations, has been coined as "smurfing" by narcotics investigators.  Brokers will often collect the pills and arrange transportation to clandestine methamphetamine lab sites or re-sale of the pseudoephedrine products to other methamphetamine manufacturing organizations.

### Purpose of Affidavit

8.   This affidavit is made in support of a criminal complaint and for arrest warrants based on probable cause to believe that David Hernandez ("HERNANDEZ"), Kenia Munguia ("MUNGUIA"), Edwin Alas ("ALAS"), Rogelio Antonio Ramirez ("RAMIREZ") and Carlos Mendez ("MENDEZ") have:

a.   conspired and agreed with others unknown to knowingly and intentionally aid and abet the manufacture of more than 50 grams, of actual methamphetamine, a schedule II controlled substance, in violation of Title 21, United States Code, Section 841(a)(1); and

b.   knowingly and intentionally possessed pseudoephedrine, a listed chemical, knowing and having reasonable cause to believe that the pseudoephedrine would be used to manufacture a controlled substance, namely methamphetamine, a

4

Schedule II controlled substance, in violation of Title 21,
United States Code, Section 841(c)(2).

9.   This affidavit is also made in support of a search
warrant applications for the locations described below.

**The Premises to Be Searched**

10.   I make this affidavit in support of search warrants for
the following locations:

a.   10520 Condon Avenue, in the Unincorporated Area of
Lennox, California.  10520 Condon Avenue is further described as
a single story beige stucco duplex, with brow trim and a black
roof.  10520 Condon Avenue is located to the rear of 10518
Condon Avenue.  The numbers "10520" are affixed to the north side
of the structure.  The front door to the residence faces east.
This location will hereinafter be referred to as "the CONDON
HOUSE".

b.   3117 London Street, Los Angeles, California.  3117
London Street is further described as a single story white house
with gray trim and a gray roof.  The numbers "3117" are located
on the front of the residence above the mailbox.  The front door
is a black security door that faces south and there are white
security bars on the windows.  This location will hereinafter be
referred to as "the LONDON HOUSE".

c.   11041 Dodson Street, Apartment D, El Monte,
California is further described as a tan multi unit two story
apartment complex with a black security gate.  Apartment D is the
4th apartment from the street.  The complex has a driveway on the

5

east side and the numbers "11041" are located on the front of the building.  This location will hereinafter be referred to as "the DODSON HOUSE".

      d.   A Maroon Nissan Sentra, license plate number 6ADV050, registered to Carla Morales at 3432 East Third Street Los Angeles, CA (hereinafter the "NISSAN");

      e.   A gray Mitsubishi convertible, license plate number GST99, registered to HERNANDEZ at the CONDON HOUSE (hereinafter the "Mitsubishi");

      f.   A Black Acura, license plate number 6COF905, registered to HERNANDEZ at the CONDON HOUSE (hereinafter the "ACURA").

## The Items to Be Seized

11.  The items to be seized are evidence of violations of the Target Offenses, as described in Attachment "B."

12.  This affidavit is intended to set forth facts to show there is probable cause to believe that HERNANDEZ has committed the above referenced violations.  It does not purport to set forth all of my knowledge or facts known to the investigation into this matter.  The statements set forth in this affidavit are based on my training and experience, my discussions with other federal and state law enforcement personnel familiar with the individuals discussed in this affidavit, my review of reports and other documents prepared by federal and state law enforcement officers, and other reliable sources of information relevant to this investigation.

## STATEMENT OF PROBABLE CAUSE

13.  On or about June 6, and June 11 2008, I read reports of Detective T. Miles, of the of the Los Angeles Interagency Metropolitan Police Apprehension Crime Task Force ("LA IMPACT") concerning this investigation.  Thereafter, I spoke with Detective Miles.  Based on my review of the reports and my discussions with Detective Miles, I have learned the facts stated in the following paragraphs.

14.  On or about April 22, 2008, Detective Miles reviewed the pseudoephedrine product sales files of CVS stores, and noticed that HERNANDEZ had purchased large amount of pseudoephedrine products, exceeding the daily and monthly limit allowed by law in the month of March 2008.

15.  Based on purchase patterns, members LA IMPACT set up surveillance at the CVS store located at 8601 S. Sepulveda, Los Angeles.[1]

### The April 23, 2008 Surveillance

16.  On April 23, 2008, at 2:40 p.m.,[2] Detective Banuelos saw HERNANDEZ arrive at the CVS Pharmacy located at 8601 S. Sepulveda.  HERNANDEZ was the front passenger in the Sentra being driven by MUNGUIA.  ALAS was seated in the rear passenger's seat.  Detective Banuelos saw the three enter the CVS Pharmacy location and walk out of his view.  A short time later Detective

---

[1]     All cities referred to herein are in California, and thus only the city name will be given.

[2]     All times are approximate.

7

Banuelos saw all three (HERNANDEZ, MUNGUIA and ALAS) exit the CVS.  Each was holding a small white plastic CVS Pharmacy bag. The three entered the NISSAN and drove away followed by the surveillance team.

17.  The surveillance team followed the NISSAN to the CVS Pharmacy located at 5101 Rodeo Road, Los Angeles where Detective Parra saw HERNANDEZ walk into the CVS store.  Detective Parra followed HERNANDEZ into the store and saw HERNANDEZ buy two boxes of pseudoephedrine.  Detective Miles then saw HERNANDEZ exited the store, open the boxes, remove the contents (pseudoephedrine pills), and place the empty boxes into the trash can near the front of the store.  After HERNANDEZ had exited the CVS store, Detective Parra watched as ALAS entered the CVS store.  Detective Parra saw ALAS exit the CVS store with a bag. Detective Miles saw ALAS remove two boxes from the bag, remove the contents (pseudoephedrine pills) from the boxes, and place the empty boxes into the same trash can.  Thereafter Detective Parra saw MUNGUIA do the same thing.  The three then got into the NISSAN and drove away.

18.  After the NISSAN drove away, Detective Parra recovered four empty pseudoephedrine boxes from the trash can in front of the CVS store located at 5101 Rodeo Road.

19  The surveillance team then followed HERNANDEZ, ALAS and MUNGUIA in the NISSAN to the CVS Pharmacy located at 3741 Crenshaw Boulevard, Los Angeles.

8

20. Detective Hong saw MUNGUIA enter the CVS Pharmacy located at 3741 Crenshaw Boulevard and followed her in posing as a customer. Detective Hong saw MUNGUIA buy two boxes of pseudoephedrine, exit the store, remove the contents of the boxes she had purchased, and discard the empty boxes in the trash can in front of the store. This was repeated by ALAS and HERNANDEZ. The three then got into the NISSAN and drove out of the area. Detective Hong then recovered four empty pseudoephedrine boxes from the trash can in front of the CVS store located at 3741 Crenshaw Boulevard.

21. The surveillance team then followed HERNANDEZ, ALAS and MUNGUIA in the NISSAN to the following eight additional CVS Pharmacy locations:

  a. 4707 Venice Boulevard, Los Angeles;

  b. 5985 W. Pico Boulevard, Los Angeles;

  c. 9045 Wilshire Boulevard, Beverly Hills;

  d. 1001 Westwood Boulevard, Los Angeles;

  e. 12015 Wilshire Boulevard, Los Angeles;

  f. 2505 Santa Monica Boulevard, Santa Monica;

  g. 1411 Lincoln Boulevard, Santa Monica; and

  h. 219 S. Lincoln Boulevard, Los Angeles.

22. At each location members of the surveillance crew saw HERNANDEZ, ALAS and MUNGUIA make individual purchases of pseudoephedrine, exit the store, remove the contents of the boxes, and place the empty boxes and CVS bags into the trash can just outside the entrance of the stores.

9

23. Additionally, Detective Banuelos recovered six empty pseudoephedrine boxes from the trash in front of the Venice Boulevard store (see subparagraph a above) after the three left the area. Moreover, Detective Miles recovered four empty pseudoephedrine boxes from the trash in front of the W. Pico Boulevard store (see subparagraph b, above) after the three left the area. Similarly, Detective Parra recovered four empty pseudoephedrine boxes from the trash near the CVS store at Westwood Boulevard, (see subparagraph d, above) after the three had left the area. Detective Miles recovered two empty pseudoephedrine boxes from the trash near the 12015 Wilshire Boulevard store, (see subparagraph e, above) after the three had left the area.

24. During the surveillance, Detective Lyga was able to approach the NISSAN, and in plain view, see a gray duffle bag on the rear seat.

25. At 7:20 p.m., the surveillance team followed HERNANDEZ, ALAS and MUNGUIA to the CONDON HOUSE where they parked. Detective Banuelos HERNANDEZ exit the NISSAN holding the gray duffle bag, previously seen by Detective Lyga. Detective Banuelos saw HERNANDEZ and ALAS walk down the driveway of the CONDON HOUSE toward the front door. Detective Banuelos saw MUNGUIA drive away in the NISSAN, alone.

26. At 7:36 p.m. Detective Banuelos saw HERNANDEZ and ALAS enter the MITSUBISHI. The surveillance officers followed the

MITSUBISHI as it drove to a carwash located approximately one mile north on Inglewood Avenue.

27. Once at the Car Wash, Detective Lyga saw HERNANDEZ and ALAS met with an unidentified male who arrived driving the ACURA and further saw the three engage in what appeared to be a brief conversation. Detective Lyga then saw HERNANDEZ and ALAS get back into the MITSUBISHI and drive north on Inglewood Avenue.

28. Members of the surveillance team followed HERNANDEZ and ALAS to 832 S. Oxford in Los Angeles where HERNANDEZ exited the MITSUBISHI and walked into the building, out of the surveillance officers' view. HERNANDEZ returned to the MITSUBISHI about one minute later and re-entered on the driver's side. ALAS then exited the vehicle and walked to 835 S. Oxford, out of the surveillance officers' view. The surveillance team then followed HERNANDEZ as he drove alone in the MITSUBISHI back to 10520 Condon. At that time surveillance was terminated for the day.

**The April 24, 2008 surveillance**

29. On the morning of April 24, 2008, an LA IMPACT surveillance established surveillance at the CONDON HOUSE. At 8:45 a.m., MUNGUIA arrived driving the NISSAN. Detective Banuelos saw MUNGUIA exit the NISSAN holding a CVS bag that appeared to have a single box (about the size of a pseudoephedrine package) inside.

30. At 8:55 a.m. MUNGUIA and HERNANDEZ walked from the CONDON HOUSE to the NISSAN and got inside. MUNGUIA drove the NISSAN to the southwest corner of Lennox and Hawthorne, where

11

they parked in the parking lot of "Top Value Market".  At 8:59 a.m., Detective Miles saw ALAS (who was making purchases of pseudoephedrine with HERNANDEZ and MUNGUIA on April 23, 2008) approach the NISSAN.  The three walked out of the surveillance officers' view and into "Top Value".  Approximately ten minutes later, Detective Lyga saw all three return to the NISSAN and drive to a check cashing location, then to a small restaurant before returning to the CONDON HOUSE.

31.   At 9:10 a.m., HERNANDEZ, MUNGUIA and ALAS returned to the NISSAN and surveillance followed as they drove to the CVS Pharmacy located at 4345 W. Century Boulevard, Inglewood.

32.   Detective Miles saw HERNANDEZ enter the 4345 W. Century Boulevard, CVS store alone.  Detective Lyga followed HERNANDEZ in and saw him buy one box of pseudoephedrine.  Prior to HERNANDEZ exiting, detective Miles saw MUNGUIA and ALAS enter the store together.

33.   Members of the surveillance team saw HERNANDEZ exit the CVS store and toss an empty pseudoephedrine package into the trash just outside the entrance to the store.  Detective Lyga saw both MUNGUIA and ALAS make purchases of pseudoephedrine. Surveillance team members then saw MUNGUIA and ALAS  removed the contents from the boxes and each placed the empty boxes into the trash.  The three then returned to the NISSAN and surveillance followed them back to the CONDON HOUSE where they drove the NISSAN down the driveway and out of view.

34.  At 2:45 p.m. Detective Miles saw HERNANDEZ, MUNGUIA and ALAS drive in the NISSAN from the CONDON HOUSE to the CVS Pharmacy located at 4345 W. Century Boulevard for a second time. All three exited the NISSAN and walked into the store. Approximately five-minutes later they exited the store, returned to the NISSAN and drove back to the CONDON HOUSE.

35.  At 3:45 p.m., Detective Miles saw MUNGUIA leave the CONDON HOUSE, get into the NISSAN and drive away.  Very shortly thereafter, Detective Miels saw  ALAS leave the CONDON HOUSE driving the ACURA.  The two drove in tandem to the LONDON HOUSE, and Deteive Miles saw MUNGUIA appear to open the door to the LONDON HOUSE with a key.  Both ALAS and MUNGUIA went inside.

36.  At 4:55 p.m., Detective Miles saw ALAS exit the LONDON HOUSE and get into the ACURA.  Detective Lyga and others followed ALAS to the Dodson Street House.  Detective Lyga parked his undercover vehicle in what turned out to be ALAS's parking space. ALAS told Detective Lyga that Detective Lyga was in his (ALAS' parking space).  Detective Lyga moved, ALAS parked the ACURA and Deteive Lyga saw ALAS enter the DODSON HOUSE.

37.  At 5:00 p.m., Detective Miles saw MUNGUIA exit the LONDON HOUSE and go to the NISSAN.  Detective Miles saw MUNGUIA retrieve a CVS bag which appeared to have a couple of small (pseudoephedrine size boxes in it) and return to the LONDON HOUSE.

38.  At 5:05 p.m. an unknown male came to the LONDON HOUSE. Later the unknown male and others left with MUNGUIA.  They all

got into the NISSAN and drove away.   At that point surveillance
was terminated

### The June 10, 2008 Surveillance

39.   On Tuesday, June 10, 2008 Detective Miles obtained the
pseudoephedrine purchase records of HERNANDEZ, MUNGUIA and ALAS
from CVS pharmacy and discovered that HERNANDEZ's purchases of
pseudoephedrine have slowed while ALAS and MUNGUIA's have
appeared to increase.   Detective Miles also discovered that ALAS
and MUNGUIA have been making pseudoephedrine purchases with two
additional people (subsequently identified as RAMIREZ and MENDEZ.
Detectives conducted surveillance of these suspects and followed
them to several CVS pharmacy locations where the following was
observed.

40.   Based on purchase patterns, Detective Miles and members
of the LA IMPACT surveillance team set up surveillance at the CVS
located at 1001 Westwood Boulevard, Los Angeles.   Upon arrival,
Detective Miles saw ALAS, MUNGUIA, RAMIREZ, and MENDEZ walking
south on Westwood Boulevard, away from the CVS Pharmacy and into
a video game store located approximately one block away.

41.   At 3:15 p.m., Detective Honore saw ALAS, MUNGUIA,
RAMIREZ, and MENDEZ leave the video game store and walk to the
NISSAN.   Detective Miles and the surveillance team then followed
the four as MUNGUIA drove the NISSAN to the CVS Pharmacy located
at 12015 Wilshire Boulevard, Los Angeles.   At 3:22 p.m., they
arrived and entered the 12015 Wilshire Boulevard CVS store.
Detective K. Honore followed the four inside and saw ALAS,

MUNGUIA, RAMIREZ, and MENDOZA each purchase pseudoephedrine.   The surveillance team then saw the four suspects leave the store and return to the NISSAN.   MUNGUIA drove the NISSAN away from the Wilshire CVS.

42.   The surveillance team followed the NISSAN and saw it arrive at the CVS located at 2505 Santa Monica Boulevard at 3:38 a.m., MUNGUIA parked the NISSAN and remained inside while ALAS, MENDOZA and RAMIREZ entered the CVS Pharmacy.   Detective Parra followed the three into the store and observed MENDOZA and RAMIREZ each purchase pseudoephedrine from the location.   ALAS did not purchase pseudo ephedrine at that location.

43.   The surveillance team then saw ALAS, MENDOZA and RAMIREZ leave the Santa Monica Boulevard and return to the NISSAN.   MUNGUIA drove the NISSAN away from the Santa Monica Boulevard CVS and the surveillance team followed.

44.   The surveillance team saw MUNGUIA drive the NISSAN into the parking area of CVS Pharmacy located at 1411 Lincoln Boulevard, Santa Monica at 3:57 p.m.   ALAS, MUNGUIA, RAMIREZ, and MENDOZA all entered the CVS store.   Detective Hong followed the four inside and saw MENDOZA and ALAS each make buy pseudoephedrine.   Detective Hong also saw MUNGUIA and RAMIREZ each make two separate purchases of pseudoephedrine.   Detective Hong saw RAMIREZ and MENDOZA remove the blister packs from the pseudoephedrine boxes and throw the empty boxes into the trash can near the front of the CVS before returning to the NISSAN.

15

Detective Hong later recovered the empty boxes from the trash can.

45.   After returning to the NISSAN, the surveillance team followed ALAS, MUNGUIA, RAMIREZ, and MENDOZA as they drove to the CVS Pharmacy located at 219 Lincoln Boulevard, Los Angeles.  At 4:15 they arrived and Detective Miles followed them into the store.  Detective Miles saw ALAS, MUNGUIA, RAMIREZ, and MENDOZA all purchase pseudoephedrine.  Detective Kaiser saw MUNGUIA exit the store with her hands in her pockets and walk back to the NISSAN.  Detective Kaiser also saw ALAS, MENDOZA, and RAMIREZ exit the store, remove the blister packs from the boxes and place the empty boxes into the trash can and return to the NISSAN. Detective Miles recovered the empty pseudoephedrine boxes from the trash can after the four had left the area.

46.   The rest of the surveillance team followed the NISSAN. At 5:00 p.m., it arrived at the CVS pharmacy located at 8601 S. Sepulveda Boulevard, Los Angeles.  Detective Parra followed ALAS, MUNGUIA, RAMIREZ, and MENDOZA into the CVS Pharmacy where he saw each purchase pseudoephedrine.  When the suspects exited, Detective Kaiser and Detective Hong saw each individual remove the blister packs from the boxes and dump the empty boxes into the trash can outside the store.  Detective Parra recovered three pseudoephedrine boxes and three CVS pharmacy receipts, indicating pseudoephedrine purchases, from the trash can.

47.   The surveillance team followed the NISSAN (carrying the four individuals) to the CVS Pharmacy located at 4345 W. Century

16

Boulevard, Inglewood.  At 5:25 p.m., team members saw ALAS, MUNGUIA, RAMIREZ, and MENDOZA all enter the CVS, but did not follow the suspects into this location.

48.  CVS records indicated that ALAS, MUNGUIA, RAMIREZ, and MENDOZA all purchased pseudoephedrine the CVS Pharmacy located at 4345 W. Century Boulevard.

49.  The surveillance team followed the NISSAN, driven by MUNGUIA south on Hawthorne Boulevard to the area of 120th Street and Hawthorne Boulevard where they lost sight of the NISSAN. However, approximately 30 minutes later, the surveillance team re-located the NISSAN at the CVS Pharmacy located at 2834 W. Imperial Highway, Inglewood.  No one from the surveillance team saw any of the individuals purchase pseudoephedrine, however, Detective Miles later checked CVS' records of pseudoephedrine sales and determined that on June 10, 2008, ALAS, MUNGUIA, RAMIREZ, and MENDOZA all purchased pseudoephedrine the CVS Pharmacy located at 2834 W. Imperial Highway.

50.  After relocating the NISSAN, the surveillance team followed the NISSAN (containing ALAS, MUNGUIA, RAMIREZ, and MENDOZA) to 4620 S. Main Street, Los Angeles (which appeared to be an auto transmission repair shop).  Detective Parra saw the ACURA, (previously observed being driven by ALAS on the April 23rd surveillance and registered to HERNANDEZ) parked at 4620 S. Main.  Detective Parra also saw the suspects talking with an unidentified male Hispanic at the location as they stood at the front of the ACURA and appeared to be looking under the hood.

17

Detective Parra saw ALAS remove a black plastic shopping bag
(which was bulging and appeared to contain blister packs) from
the passenger's compartment of the NISSAN and place it into the
driver's seat of the ACURA.

51.   ALAS, MUNGUIA, RAMIREZ, and MENDOZA all returned to the
NISSAN and drove out of the area.   The team remained at 4620 S.
Main.   At 7:26 p.m., Detective Parra observed the unidentified
male Hispanic approach the ACURA and remove what appeared to be
the same black plastic shopping bag that ALAS had placed inside.
The unidentified male Hispanic took the bag into the transmission
shop out of view.   Later, at about 9:30 p.m., the unidentified
male Hispanic entered a vehicle and drove away.

52.   Based on my training and experience, I know that drug
traffickers commonly store drugs, guns, and other items in their
residences and vehicles and use their vehicles to transport these
items between locations.   The evidence indicates the people
involved in this investigation are no are no different (i.e. the
NISSAN and the ACURA are used to transport and store
pseudoephedrine and other items).   Thus, I believe there is
probable cause to search these vehicles and the other vehicles
listed in Attachment A.

**AUTHORIZATION TO SEARCH PREMISES WITHOUT ANNOUNCEMENT AT ANY TIME
IN THE DAY OR NIGHT**

53.   In light of the evidence I am requesting authorization
to search the locations "at any time in the day or night"
pursuant to Federal Rules of Criminal Procedure 41(c).   Based on

the facts above indicating that the individuals who may be present at the Target Locations engage in drug trafficking, the fact that they are surveillance conscious and mobile and the holding set forth in <u>Gooding v. United States</u>, 416 U.S. 430 (1974), that there is no need for the presence of exigent circumstances in narcotics cases to justify a night time search, I believe that night time service is warranted in this case.

### CONCLUSION

54. Based on my training and experience, coupled with the observations made by Officer Hong and other narcotics investigators involved in this investigation, there is probable cause to believe that HERNANDEZ conspired and agreed with others unknown to knowingly and intentionally aid and abet the manufacture of more than 50 grams of actual methamphetamine, a schedule II controlled substance, in violation of Title 21, United States Code, Sections 846 and 841(a)(1); and knowingly and intentionally possessed pseudoephedrine, a listed chemical, knowing and having reasonable cause to believe that the pseudoephedrine would be used to manufacture a controlled substance, namely methamphetamine, a Schedule II controlled substance, in violation of Title 21, United States Code, Section 841(c)(2).

Bradley Clemmer
Special Agent
Drug Enforcement Administration

Subscribed and sworn to before me
this 12th    of June ____, 2008.

UNITED STATES MAGISTRATE JUDGE

19